**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Criminal Case No. 05-cr-00094-REB-7

UNITED STATES OF AMERICA,

      Plaintiff,

v.

7. JEFFREY ROBERT HERMANSEN,

      Defendant.

---

**ORDER DENYING DEFENDANT'S MOTION TO ENFORCE PLEA AGREEMENT
BASED ON INEFFECTIVE ASSISTANCE OF COUNSEL
(Evidentiary Motion)**

---

Blackburn, J.

      On March 20, 2006, I conducted an evidentiary hearing on defendant's **Motion

To Enforce Plea Agreement Based on Ineffective Assistance of Counsel

(Evidentiary Motion)** [#317] filed March 2, 2006. I deny the motion without additional

evidentiary hearing.[1]

      In fashioning my ruling, I have considered the following: 1) all relevant

adjudicative facts in the file and record of this action *pro tanto*; 2) the evidence educed

at the March 20, 2006, hearing; and 3) all reasons stated, arguments advanced, and

---

[1] In my **Minute Order** entered March 6, 2006, I ordered, *inter alia*, that "Hearing on the motion should be bifurcated. At the first evidentiary hearing the court should receive evidence to determine the issues of fact and law raised by or inherent to paragraphs one through ten of the motion . . . ." Minute Order at 1 [#] entered March 6, 2006. I ordered further that "Contingent on the resolution of the foregoing issues of fact and the concomitant issues of law, a second evidentiary hearing may be necessary to determine the issues of fact and law raised by or inherent to paragraphs eleven through fourteen of the motion, which focus on defendant's claim of ineffective assistance of counsel." *Id*. at 2. My ruling obviates the necessity for a second hearing.

authorities cited by the parties.

In assessing the credibility of the two witnesses who testified during the hearing, I have considered all facts and circumstances shown by the evidence that affected the credibility of each witness, including the following factors: the witness' means of knowledge, his ability to observe, and his strength of memory; the manner in which the witness might be affected by the outcome of the hearing; the relationship the witness has to either side in the case; and the extent to which the witness is either supported or contradicted by other evidence presented during the hearing.

My findings of fact are based upon a preponderance of the evidence.

Based on the foregoing, I enter the following findings of fact, conclusions of law, and orders.

### FINDINGS OF FACT:

The uncontroverted chronology of relevant events is as follows.

The Grand Jury returned the initial Indictment [#37] on March 9, 2005, against defendant and six others. In the Indictment defendant and defendant, Ian Ensell, were charged in Counts 29 and 30 with possession of stolen mail and aiding and abetting in violation of 18 U.S.C. §§ 1708 and 2.

On June 17, 2005, the government filed a **Status Report** [#115] in which the government advised defendant and me, *inter alia*, of its intent to seek a superseding indictment against defendant, alleging that defendant was subject to 23 counts of possession of stolen mail in violation of 18 U.S.C. § 1708, over 100 counts of possession of counterfeit securities in violation of 18 U.S.C. § 513(a), and nine counts

of additional fraud related to identification documents in violation of 18 U.S.C. § 1028. Status Report at 2. The government reported that it anticipated a presentation to the Grand Jury during the week of July 11, 2005. *Id.*

On July 11, 2005, the Grand Jury returned a four-count Superseding Indictment [#138] against defendant, individually. The Superseding Indictment charged defendant as follows: in Count 1 defendant was charged with possession of implements to counterfeit documents in violation of 18 U.S.C. § 1028 (a)(5); in Count 2 defendant was charged with possession of stolen mail in violation of 18 U.S.C. § 1708); in Count 3 defendant was charged with making, possessing, and uttering counterfeit/forged securities of an organization in violation of 18 U.S.C. § 513(a); and in Count 4 defendant was charged with fraud and related activity in connection with identification documents in violation of 18 U.S.C. § 1028 (a)(3).

On August 12, 2005, and September 1, 2005, I conducted status conferences as requested by the parties on the strength of their representations that a plea agreement was likely. In fact, at the conclusion of the September 1, 2005, status conference, I set the matter for change of plea hearing for October 14, 2005. *See* **Courtroom Minutes** [#202] entered September 1, 2005.

However, on October 14, 2005, instead of holding a change of plea hearing as originally set, I conducted a status/ scheduling conference. *See* **Courtroom Minutes** [#245] entered October 14, 2005. I converted the change of plea hearing to a status/scheduling hearing at the parties' request because no plea agreement had been reached. Accordingly, I set a Trial Preparation Conference for January 20, 2006, and a

jury trial for January 23, 2006. *Id*.

Defendant filed pretrial motions. *See* [#s 255, 256, 257, and 258]. On November 4, 2005, defendant's pretrial motions were set for hearing on January 13, 2006. *See* **Minute Order** [#266] entered November 4, 2005.

On November 3, 2005, defendant's attorney, Kerry S. Hada, filed his motion to withdraw. *See* [#264]. The motion was granted on November 21, 2005. *See* [#272].

On November 23, 2005, J. Tyler Makepeace entered his written appearance on behalf of defendant. *See* [#273].

On January 13, 2006, I converted the motions' hearing to a status conference at the parties' request. *See* **Courtroom Minutes** [#289] entered January 13, 2006. During this proceeding, Mr. Makepeace announced his intention to file a notice of disposition on behalf of defendant. *Id*. In anticipation of defendant's notice of disposition, I entered a **Minute Order** [#291] on January 18, 2006, setting a change of plea hearing for January 20, 2006, at the same time as the Trial Preparation Conference. Mr. Makepeace was quixotically sanguine that defendant would accept the government's offer.

On January 20, 2006, I was unable to conduct a change of plea hearing or Trial Preparation Conference as scheduled, because I determined that Mr. Makepeace was not in good standing as a member of the bar of the court. This disability prevented him from representing defendant. Thus, *per force*, I vacated the change of plea hearing, the Trial Preparation Conference, and jury trial set to commence January 23, 2006. Instead, I ordered that counsel be appointed to represent defendant and that a status

conference be set for February 3, 2006.

Effective January 24, 2006, M. David Lindsey was appointed to represent defendant. *See* [#305] entered January 24, 2006.

On January 25, 2006, the Grand Jury returned a ten-count Second Superseding Indictment [#304] against defendant, individually. Defendant was charged variously with violations of 18 U.S.C. §§ 513(a), 1028 (a)(3) and (5), 1028A, and 1708.

The status conference set initially for February 3, 2006, was continued to February 10, 2006. On that date I conducted a status and scheduling conference during which I arraigned the defendant on the Second Superseding Indictment, imposed a motions' filing deadline, and set a motions' hearing setting conference.  There was no motion, petition, request, or discussion concerning the putative plea agreement.

The evidence educed at the March 20, 2006, established the following.

Mr. Makepeace practices primarily in the areas of criminal defense and domestic relations. He was a prosecutor for five years and has been in criminal defense since February, 1977.

In October, 2005, defendant's mother retained Mr. Makepeace, ostensibly with the knowledge and approbation of defendant, to represent defendant in a child support matter and in state court criminal matters pending in Arapahoe, El Paso, and Jefferson counties. Mr. Makepeace's purview of representation was expanded in November, 2006, to include representation of defendant in this case. As of November 23, 2006, when Mr. Makepeace entered his appearance on behalf of defendant in this case, he had been reinstated to practice law in the state courts of Colorado, but, unknown to him, not in the United States District Court for the District of Colorado.

Contemporaneously with his entry of appearance, Mr. Makepeace had a discussion about the case with Mr. Hada, defendant's quondam counsel. From Mr. Hada,  Makepeace learned that defendant had rejected a similar plea offer made by the government. In the words of Mr. Makepeace, "It [the plea agreement] was close; it was close."

Mr. Makepeace began discussing a possible plea agreement with Mr. Mackey in December, 2005, or January, 2006. When the parties appeared before me on January 13, 2006, ostensibly for hearing of timely filed pretrial motions, they represented that they believed they had reached a plea agreement, requested that the motions' hearing be vacated, requested that defendant's pending pretrial motions to suppress be withdrawn, and requested that the matter be continued for a change of plea hearing. I granted their requests and set a change of plea hearing to coincide with the Trial Preparation Conference set for January 20, 2006. I advised and warned the parties that the case would proceed to trial as set on January 23, 2006, if the matter was not sooner resolved by plea agreement approved by the court.

On January 13, 2006, Mr. Makepeace met with Mr. Mackey in his office to discuss the terms of a proposed plea agreement. Their hour-long conference included a discussion of the general parameters of a plea agreement and included a review of the written plea agreement, which the government had offered defendant through Mr. Hada. Throughout their discussions Mr. Mackey made clear to Mr. Makepeace that if the defendant rejected the plea offer, the government was proceeding to trial. In turn, Mr. Makepeace discussed the basic substance of the government's plea offer and the government's adamantine position with defendant. The defendant understood the

-6-

essential terms of the government's plea offer, and he understood that his rejection of the plea offer would result in a trial.

After the January 13, 2006, hearing, Mr. Makepeace made good faith attempts to file a notice of disposition first by facsimile transmission and then by electronic filing through the court's CM/ECF electronic filing system. His efforts were unsuccessful because he was not a member in good standing of the bar of the court. On January 16 or 17, 2006, he learned to his surprise and chagrin that despite his earlier reinstatement in state court, he had not been reinstated in federal court.

Mr. Makepeace immediately notified Mr. Mackey and defendant's mother. He was unable to notify defendant immediately because defendant was detained in the Jefferson County Jail, which did not permit telephonic contact with detainees.

On January 18, 2006, Mr. Makepeace received from Mr. Mackey the government's proposed plea agreement in writing. Mr. Makepeace never reviewed the proposed written plea agreement with defendant.

Mr. Mackey arranged also for Mr. Makepeace and defendant's mother to meet with the postal inspector in charge of the investigation to review in detail the discovery and evidence in the case. During an hour-long meeting on January 18, 2006, in Mr. Makepeace's office, Mr. Makepeace, defendant's mother, and the postal inspector had an extensive discussion focusing primarily on the issues troubling defendant and his mother – actual and intended loss for sentencing guideline purposes. The parties discussed also how the number of victims increased the offense level for sentencing purposes. In the words of Mr. Makepeace, "[the postal inspector] was cooperative; he clearly explained the government's position. He explained how he investigated the

-7-

case, and he spent the necessary time to acquaint Mrs. Hermansen and myself with the facts from the government's standpoint."

On January 19, 2006, Mr. Makepeace received a telephone call from defendant and his mother. Mr. Makepeace informed defendant that he could not practice in federal court. Mr. Makepeace discussed again the government's proposed plea agreement with defendant and his mother. Defendant had not accepted the plea agreement offered by the government and was not then inclined to accept it. Defendant never indicated to Mr. Makepeace a willingness to accept the plea agreement proposed by the government. Defendant's mother, who was very involved, basically indicated that she was not recommending the proposed plea agreement, and so defendant wanted Mr. Makepeace to try to negotiate something better.

After speaking with defendant and his mother by telephone on January 19, 2006, Mr. Makepeace informed Mr. Mackey that he was having problems with defendant's mother, who Mr. Makepeace felt had an undue influence on defendant. Mr. Makepeace told Mr. Mackey that "Mr. Hermansen wasn't getting it." Mr. Makepeace told Mr. Mackey that "I am having difficulty with his mother. Jeff [the defendant] is not there yet." Defendant was concerned apparently about the severity of the offense level and concomitant sentencing range under the sentencing guidelines. Defendant's concerns focused specifically on the amount of the actual loss sustained by the victims versus the much higher intended loss, which resulted in a dramatic increase in the offense level, which, in turn, increased dramatically the guideline sentencing range. The advisory guideline sentencing range under the government's proposed plea offer was imprisonment from 21 to 17 months, which was unacceptable to defendant. Mr. Mackey

reasonably construed Mr. Makepeace's comments as tantamount to defendant's rejection of the government's plea offer.

Mr. Makepeace testified hypothetically that had he been able to practice in federal court, he would have arrived early at the federal courthouse on the morning of January 20, 2006, to review the proposed written plea agreement with defendant line by line and to urge him in the strongest terms possible to accept the plea agreement.

Immediately after the brief hearing on January 20, 2006, Mr. Mackey informed Mr. Makepeace, while they were together in or near the courtroom, that the government was proceeding to trial. Mr. Mackey expressed his frustration to Mr. Makepeace because defendant had not accepted the government's plea offer. As counsel parted company on January 20, 2006, no plea agreement had been reached, and the government's plea offer had been withdrawn.

Five days later, the Second Superseding Indictment was returned. Defendant's exposure had increased dramatically.

With the benefit of twenty-twenty hindsight, defendant testified unconvincingly that if Mr. Makepeace had been able to represent him at the January 20, 2006, hearing, he would have accepted the government's plea offer and entered a plea of guilty. Defendant's self-serving testimony is belied by the uncontroverted facts that defendant had already rejected the same or a similar plea agreement on its presentation by his quondam counsel, Mr. Hada, and had rejected this very plea agreement just the night before. Defendant testified conveniently that he just wanted "[m]ore than anything to get this behind me," noting that he had been incarcerated since May 5, 2005. Tellingly, defendant's belated claim is belied further by his utter failure to communicate, or

-9-

attempt to communicate, in a timely manner to anyone in any way his decision to accept the government's plea offer.  Although defendant was aware that the government's plea offer expired as of the hearing on January 20, 2006, defendant made no effort of any kind or in any form – through his mother, to Mr. Makepiece, to the government, or to the court – to express or attempt to express his acceptance of the plea agreement either before, during, or after the brief hearing on January 20, 2006.

The totality of factual circumstances leads me to conclude the defendant was not prepared to accept the government's proposed plea agreement until the filing of the Second Superseding Indictment with its additional charges on January 25, 2006. It was the filing of this minatory indictment with its increased and enhanced charges that incentivized defendant to seek to accept belatedly the government's offer. Until then, defendant had no intention of accepting the plea offer, and, in fact, had not accepted the government's plea offer prior to its withdrawal on January 20, 2006. Instead, defendant had rejected the government's plea offer when presented first by Mr. Hada and then by Mr. Makepeace. Defendant's latest rejection was effective January 19, 2006, which rejection was communicated promptly by Mr. Makepeace to Mr. Mackey. The parties never had a plea agreement.

**CONCLUSIONS OF LAW:**

Defendant contends that he was prevented from accepting or consummating a negotiated plea agreement with the government due to the ineffective assistance of his attorney, J. Tyler Makepeace. I disagree.

To prevail on an ineffective assistance of counsel claim, defendant must show 1) that his attorney's performance was unreasonable under prevailing professional

standards, **Strickland v. Washington**, 466 U.S. 668, 687-91, 104 S.Ct. 2052, 2064-66,

80 L.Ed.2d 674 (1984); and 2) that there is a "reasonable probability that but for

counsel's unprofessional errors, the result would have been different," **id**. at 694, 104

S.Ct. at 2068. **Strickland** defines a reasonable probability as "a probability sufficient to

undermine confidence in the outcome." **Id**.  To meet the second part of the **Strickland**

test, defendant must show that there is a reasonable probability that "but for counsel's

unprofessional errors, the result would have been different." **Id**. *See also*, **Lockart v.

Fretwell**, 506 U.S. 364, 372, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (holding that

under **Strickland**, petitioner must show that "counsel's deficient performance renders

the result of the trial unreliable or the proceeding fundamentally unfair"). Under the

second prong of **Strickland**, the defendant must demonstrate a "reasonable

probability" that counsel's performance prejudiced the defendant, meaning a probability

"sufficient to undermine confidence in the outcome." **Strickland**, at 694, 104 S.Ct.

2052. This is less than a preponderance of the evidence, for "a defendant need not

show that counsel's deficient performance more likely than not altered the outcome of

the trial." **Fisher v. Gibson**, 282 F.3d 1283, 1307 (10th Cir.2002) (emphasis added)

(quotation omitted). *See also* **McLuckie v. Abbott**,  337 F.3d 1193, 1198 (10th Cir.

2003). Here, the resulting prejudice must amount to a showing that, but for Mr.

Makepeace's errors, defendant would have accepted the offered plea bargain.[2] *See* **Hill**

---

[2] In measuring prejudice to defendant, I do not consider relevant the fact that defendant may
proceed to trial. In **United States v. Day**, 969 F.2d 39 (3rd Cir.1992), the Third Circuit "squarely rejected"
the argument that "a defendant can suffer no prejudice by standing a fair trial." **Id**. at 44. As the **Day** court
stated, "the Sixth Amendment right to effective assistance of counsel guarantees more than the Fifth
Amendment right to a fair trial." **Id**.

*v. Lockhart*, 474 U.S. 52, 59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

Thus, **Strickland** requires a showing of both deficient performance and irreparable prejudice.  However, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." **Strickland**, 466 U.S. at 697, 104 S.Ct. 2052.  *See also* **Smith v. Mullin**, 379 F.3d 919, 929 (10th Cir. 2004). I follow that course here.[3]

I conclude that defendant's claim of ineffective assistance of counsel is pretextual – a logical red herring. Defendant has presented no credible evidence that but for Mr. Makepeace's alleged errors defendant would have effected a timely acceptance of the government's plea offer. Instead, I conclude that defendant was never sufficiently motivated to accept the government's plea offer until the Second Superseding Indictment was filed on January 25, 2006. However, by then there was nothing to accept, because the defendant had rejected the offer effective January 19, 2006, and to the extent the offer had any residual viability thereafter, either the government had withdrawn its offer effective January 20, 2006, or it had expired on that

_____

[3] However, for the limited and specific purposes of this motion and concomitant order, I have assumed, without deciding, that Mr. Makepeace's representation was deficient under prevailing professional standards in all of the ways alleged by defendant. Additionally, I have given defendant the benefit of the doubt as to any other alleged deficiencies that may have been suggested during the evidentiary hearing, including, but not necessarily limited to, Mr. Makepeace's failure to insulate and isolate defendant and himself from the undue influence of defendant's mother, Mr. Makepeace's failure to obtain a waiver from defendant to permit or prohibit Mr. Makepeace from discussing the case with defendant's mother, Mr. Makepeace's failure to move to withdraw  immediately on learning that he could not represent defendant in federal court, Mr. Makepeace's failure to arrange substitute counsel for defendant for the January 20, 2006, change of plea hearing, Mr. Makepeace's failure to review the proposed written plea agreement with defendant, Mr. Makepeace's failure to better understand the advisory United States Sentencing Guidelines, including the differences and nuances among the related concepts of actual loss, restitution, and intended loss, Mr. Makepeace's failure to negotiate a plea agreement that preserved expressly the right to object to the government's position on loss and restitution, etc.

date.[4]

Defendant can not claim credibly that he did not understand the consequences of his rejection of the government's plea offer. He was fully aware that his rejection or lack of timely acceptance of the plea offer would result in the case proceeding to trial without the promise or prospect of additional negotiations with or plea offers from the government. He can not argue cogently that he was prejudiced because he was not advised of the imminence of the Second Superseding Indictment The fact is that Mr. Makepeace had no knowledge of another indictment. Rightly, the Sixth Amendment does not require counsel for a criminal defendant to be clairvoyant. *See **United States v. Gonzalez-Lerma**, 71 F.3d 1537, 1542 (10th Cir.1995); *see also **Brown v. United States***, 311 F.3d 875, 878 (8th Cir.2002); and ***United States v. Harms***, 371 F.3d 1208, 1212 (10th Cir. 2004).

Similarly, defendant can not claim with probity that he did not accept the plea offer because he did not understand the essential terms of the government's plea offer because Mr. Makepeace never actually reviewed the written plea agreement with him. The response is twofold: first, after discussing the proposed plea agreement on several different occasions with Mr. Makepeace, the defendant did understand the essential terms of the plea offer, but was dissatisfied by the guideline sentencing range, which was unacceptable to him; and second, any claim of lack of understanding or claim of

---

[4] I employ generally the principles and rhetoric of contract analysis because, as the language in the leading case makes clear, "[a] plea agreement is contractual in nature." ***Santobello v. New York***, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However, I note that unlike a contract, if a plea agreement is offered by the government and accepted by a defendant, it still may be withdrawn unilaterally by the government at any time before the actual entry of the plea of guilty. *See **Mabry v. Johnson***, 467 U.S. 504, 509-11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984).

misunderstanding is vitiated by defendant's sworn testimony that he wanted to accept the deal "[m]ore than anything to get this behind me," indicating clearly that his understanding, *vel non*, of the plea offer was not an integral component of defendant's acceptance calculus.

Defendant would have me believe that in the relative short period of time between the evening of January 19, 2006, when, after discussing the plea agreement again with Mr. Makepeace, he rejected it, and the morning of the following day, January 20, 2006, he suddenly and mysteriously had a transmogrifying  bouleversement, which caused him to decide to accept the government's plea offer after months of rejection. His incredulous claim is belied by the credible evidence. With a pertinacious hope to reach a better deal, defendant simply ran out of time.

There is no plea agreement to enforce. The government's plea offer was not only never accepted by defendant by the deadline reasonably imposed by the government, but it was rejected expressly by defendant. This court can not and will not require the government to reinstate or renew its previous offer or to participate in further plea negotiations for the benefit of the defendant.[5]  Defendant's motion should be denied without additional hearing.

**THEREFORE, IT IS ORDERED** as follows:

1. That  defendant's **Motion To Enforce Plea Agreement Based on Ineffective Assistance of Counsel (Evidentiary Motion)** [#317] filed March 2, 2006, **IS DENIED**

---

[5] Requiring the government to reinstate its original plea offer is constitutionally permissible. *See Mabry v. Johnson*, 467 U.S. 504, 510 n. 11, 104 S.Ct. 2543, 2548 n. 11, 81 L.Ed.2d 437 (1984); *Santobello v. New York*, 404 U.S. 257, 263, 92 S.Ct. 495, 499, 30 L.Ed.2d 427 (1971). *See also United States v. Partida-Parra*, 859 F.2d 629, 633 (9th Cir. 1988) (noting that in certain circumstances "it may be appropriate for the court to order 'specific performance' of the [plea] bargain").

without further or additional evidentiary hearing;

    2. That the parties shall have until April 3, 2006, by which to file pretrial motions;

    3. That any response to a timely filed pretrial motion shall be filed by April 13, 2006; and

    4. That any timely filed pretrial motion requiring a hearing shall be set for hearing during a telephonic motions' hearing setting conference on April 14, 2006, at 10:00 a.m., at which time counsel shall contact the court's administrative assistant, Susan Schmitz, at 303-335-2350.

    Dated March 22, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**